Karen N. Jacobs, Esq. (238607)
JACOBS LAW FIRM, APC
15233 Ventura Blvd. Suite 324
Sherman Oaks, CA 91403
Tel: (424) 777-0207
Fax: (877) 977-8899
*Karen@JlfApc.com*

Attorneys for Plaintiffs,
Estate of Edward Ramos III and E.R., a minor

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| ESTATE OF EDWARD RAMOS III; E.R., a minor, individually and as successor in interest to deceased EDWARD RAMOS III, by and through Guardian ad Litem, Yulelba Gamez<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MERCED, MERCED COUNTY SHERIFF'S OFFICE, VERNON WARNKE, CLIFFORD TILLEY, OMAR AYALA JR., JOSE RIOS, GUSTAVO OCHOA, CAROLYN STRONG, GLENN PETERSON, JAYCOB FREITAS, HECTOR LAZARO, and DOE 1 to 20,<br><br>Defendants. | Case No. 1:25-cv-00056-JLT-SKO<br><br><br>**DECLARATION OF KAREN JACOBS REGARDING MEET AND CONFER ON SUBSTANCE OF E.R.'s MOTION TO BE SUBSTITUTED AS THE REAL-PARTY-IN-INTEREST FOR ESTATE OF EDWARD RAMOS III** |

In Compliance with the Court's March 20, 2026 Minute Order for the parties to meet and confer in good faith and discuss thoroughly the substance of E.R.'s motion to be substitute as the real-party-in- interest for the Estate of Edward Ramoss III and to discuss any potential resolution, Movant E.R.'s attorney submits the following declaration outlining the results of those efforts.

1

**DECLARATION OF KAREN JACOBS IN SUPPORT OF MOTION FOR SUBSTITUTION**

# DECLARATION

I, Karen Jacobs, hereby declare:

1.  The following statements are within my personal knowledge and, if sworn as a witness, I would and could testify competently thereto.

2.  I am an attorney at law duly admitted to practice before the Eastern District of the State of California.

3.  I am an attorney with Jacobs Law Firm, APC, counsel of record for Plaintiff E.R., a minor, by and through his guardian ad litem, Yulelba Gamez, in the above-entitled action.

4.  Although not highlighted in movant's motion, the parties did previously meet and confer regarding the issues which are the basis of this motion. On August 12, 2025 the parties, including the County of Merced represented by attorney Jenna Anderson, participated in an all-day, in-person, mediation with the Hon. Kendall J. Newman, Ret., in a good faith effort to reach an early resolution in this matter. The issue of which claimant was the appropriate person to represent the Estate of Edward Ramos III was discussed extensively at the mediation. The parties' inability to reach an agreement on this issue, which movant believes is hindering the ability to reach a final resolution with the County of Merced, is the reason movant is seeking ratification from the Court.

5.  In compliance with the Court's March 20, 2026 Minute Order, on March 27, 2026 opposing counsel, Mike Merin, Esq. and I participated in a video conference (via Zoom) to discuss E.R.'s motion to (1) ratify and substitute E.R. as the real party in interest and successor in interest to all survival claims of decedent Edward Ramos III; (2) confirming E.R. as the sole proper plaintiff for the wrongful death cause of action; and (3) dismissing or striking the claims of Roxanne Labuga and Edward Ramos, Jr. for lack of standing.

2

**DECLARATION OF KAREN JACOBS IN SUPPORT OF MOTION FOR SUBSTITUTION**

6. During the video conference we were able to narrow the discussion to the exact point of contention.

7. I subsequently sent two follow-up emails to Mr. Merin, more fully discussed below, in a good faith effort to address the specific point of contention. As of 8:00 p.m. on Thursday, April 2, 2026 I have not seen an acknowledgement or response by Mr. Merin to either email.

**Points of Agreement**

8. Mr. Merin acknowledged that E.R. is the biological child of the decedent, Edward Ramos III.

9. Mr. Merin acknowledged that his clients recognized and continue to recognize E.R. as their grandchild.

10. I made clear that movant does not contest the parents' right to bring independent wrongful death claims for their own loss, separate from the decedent's claims. Movant seeks to strike the claims of Roxanne Labuga and Edward Ramos, Jr. only as to the claims of the Estate of Edward Ramos III (i.e. the survival claim and wrongful death claim of decedent).

**Point of Contention**

11. The point of contention is whether the decedent, Edward Ramos III, held E.R. out as his child during E.R.'s lifetime. The premise of Mr. Merin's position is if the decedent did not hold E.R. out as his child, his clients may be the real party of interest to represent the Estate of Edward Ramos III.

12. Mr. Merin argued that his clients' contention that decedent did not hold E.R. out as his child creates a triable issue of fact that is to be decided by a jury at trial, not a matter to be decided by the Court as a matter of law.

3

**DECLARATION OF KAREN JACOBS IN SUPPORT OF MOTION FOR SUBSTITUTION**

13.  I argued there is no viable dispute where there is irrefutable evidence the decedent did in fact acknowledge and hold E.R. out as his son, literally from the day of E.R.'s birth up to the days leading to decedent's death. I reminded Mr. Merin of the fact he decedent was at the hospital for E.R.'s birth, of the photo of him holding E.R. in the hospital when he was born, and photos of him with E.R. at home, after his birth (Exhibit 1).

14. I reminded Mr. Merin of the audio recordings from jailhouse conversations the decedent had, a copy of which Mr. Merin received from the County of Merced, even before the August 12, 2025 mediation.

15.  A small sample of the dozens of audio files from his jailhouse calls with Yulelba Gamez eliminates any notion that decedent did not recognize E.R. as his child. The decedent is heard having conversations about naming his son, asking about his son, speaking to his son, and even asking Yulelba Gamez to ensure his son does not forget him should something happen to him. (Exhibit 2).

16. Following the conference, I had my office forward to Mr. Merin a video we obtained which specifically addressed his client's basis for opposing the motion. The video shows the decedent speaking to E.R. on the phone, saying how much he loves him. (Exhibit 3).

17. The next day, on March 28, 2026, I sent Mr. Merin a follow-up email addressing the points of agreement and the point of contention. Given the first-hand irrefutable evidence of the decedent's acceptance of his son, there is no real triable issue of fact. I asked Mr. Merin to have his clients reconsider their opposition to the motion. (Exhibit 4).

18. As of 8:00 p.m. on April 2, 2026, I had not received a response from Mr. Merin.

////

**DECLARATION OF KAREN JACOBS IN SUPPORT OF MOTION FOR SUBSTITUTION**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: April 2, 2026                                        JACOBS LAW FIRM, APC


By: _____
               Karen N. Jacobs, Esq.
               Attorneys for Plaintiffs
               ESTATE OF EDWARD RAMOS III and
               E.R., a minor

DECLARATION OF KAREN JACOBS IN SUPPORT OF MOTION FOR SUBSTITUTION

# EXHIBIT 1










Daddy loved his son 😔



# EXHIBIT 2

**Excerpts From Telephone Recordings**

**Recording 1717560434_117_12_171_968**

[irrelevant conversation omitted]

Ramos: I really do miss you though, man, and it sucks. It sucks that I'm not going to be able to be there for my son being born, but I wish I was able to be there for my son being born. But

Gamez: why they already talked to you that they're gonna give you hella time or what

Ramos: I don't even know what I'm here for, honestly, but

Gamez: Well is says something on there. What you mean you don't know.

[irrelevant conversation omitted]

**Recording 1718030220_117_12_165_801**

[irrelevant conversation omitted]

Ramos: What's my kids doing?

Gamez: Nothing.

Ramos: Huh?

Gamez: Nothing.

Ramos: Why not? No, I didn't say what my what is my kid doing? I said what's my kids doing?

Gamez: Nothing, they're knocked out

Ramos: Where they at? They sleeping right now or what?

Gamez: Yeah. Everybody.

Ramos: Everybody asleep?

Gamez: Yeah

Ramos: Okay baby, I love you so much mommy

Gamez: I love you too.

Ramos: Are you going to go back to sleep or what, baby?

Gamez: I don't know dude. The kid started kicking, so I don't think so.

Ramos: Why my son started kicking? He heard his dad. He's like daddy, daddy, what, daddy.

Gamez:--

Ramos: See because he heard his dads voice that's why...

[irrelevant conversation omitted]


### Recording 1718671183_117_12_180_353

[irrelevant conversation omitted]

Ramos: What's my son doing baby?

Gamez: I think he's fucking sleeping. He's not fucking moving. I think he's knocked the fuck out.

Ramos: Yeah? Give him beso for me. Okay Baby?

Gamez: I will...

[irrelevant conversation omitted]


### Recording 1718669267_117_12_157_393

[irrelevant conversation omitted]

Ramos: And my son? Has my son been giving you problems or what, baby?

Gamez: No.

Ramos: So what's his name gonna be, babe?

Gamez: First of all, why do you want to name him like that, huh?

Ramos: Babe, what's his name gonna be?

Gamez: Give me a good real reason.  don't know, after we were done talking,
it started making me think... I was like, wow, like, maybe he's just trying to do that cause
he's got... I don't want to say that shit but...

Ramos: Listen, Baby, you said it's a gift from God, right?

Gamez: yeah, but still, like, why would you want to name your first son that?

Ramos: Because, because that's my son. That's me knowing that. That's my baby. That's my son.

Gamez: Yeah, but we agreed on something else.

Ramos: Yeah, but see...

Gamez: From the very fucking beginning that we found out.

Ramos: Okay, but at the end of the day, it changed my mind and I don't want him to be named after me.

Gamez: Why?

Ramos: Because of everything that we went through, right? And everything that we've experienced throughout the whole thing, right? When my son's named after me I want to be able to be there for every step of that pregancy you understand that because that's that's that's gonna be that's gonna be me that's gonna be a spitting image of me right so yeah

Gamez: Yeah but do you know I your very first kid everybody that has a very first kid...always looks like him the most

Ramos: Hey guess what though I'm not everybody else

Gamez: Oh well then who are you?

Ramos: I'm a fucking me

Gamez: Yes but he's going to look like you you know that right.

Ramos: No, you're just saying he's going to look like me because you've been hating me this whole pregnancy, so you think he's going to look like me.

Gamez: He is

Ramos: No

Gamez: He's got your nose

Ramos: Look just listen to what I say, please babe. I want you to name my son what I told you I want his name to be right.

Gamez: Yeah

Ramos: Then my second son you is gonna get my name understand that

Gamez: Oh, yeah, and if it's a girl, then what.

Ramos: Well, then you're gonna give me another son I said our third will be our son because what I'm aiming for is a boy a girl and a boy

Gamez: I already got the name for a girl

Ramos: Huh?

Gamez: I already got a name for a girl.

Ramos: What?

Gamez: I already got the name for a girl

Ramos: Yeah, I said you could name the girl.

Gamez: I know I am.

Ramos: I don't have a problem with that but this one is a boy so therefore I said I was going to be in charge of naming the boys you can be in charge of naming the girls, right?

So therefore, I said, I told you what I wanted the name to be because I'll like, there's no way I've changed my mind. That's the way I want it, right? …

[irrelevant conversation omitted]

**Recording 1726281936_133_12_165_600**

[irrelevant conversation omitted]

Ramos: Baby, I love you, okay? I miss you so much. Give my son a kiss for me, babe.

Gamez: I will.

Ramos: You better be showing that nigga [E.R.]  pictures of me and shit, bitch.

Gamez: I have been. I have been. I have been. I did today, I showed him your mugshot. As soon as I showed it to him, he was like, you know how he be opening his eyes, his eyes wide open and shit?

Ramos: mhm

Gamez: I just show him.

Ramos: Dude, I just miss my son dude. I love you alright

Gamez: I love you too

Ramos: Alright I'll see you when I get out. I love you

Gamez: What you mean?

Ramos: I'm saying dude don't let my fucking son forget about me bitch. He's only two months old nigga...

Gamez: No I'm not.

[irrelevant conversation omitted]

Ramos: But just know, if anything happens that I love you so much and I love my son and don't let my son forget me.

Gamez: Well, don't be saying that.

Ramos: I'm just letting you know that, okay?

Gamez: Well, nothing ain't gonna happen.

Ramos: I'm just letting you know, though. Don't let my son forget me

Gamez: I won't

[irrelevant conversation omitted]


**Recording 1726361961_133_12_182_706**

[irrelevant conversation omitted]

Ramos: Baby.

Gamez: Huh?

Ramos: Just pray for me, I love you, okay?

Gamez: Why, what's wrong?

Ramos: Just pray for me, I love you, okay?

Gamez: Alright.

Ramos: I love you, baby, okay?

Gamez: I love you, too.

Ramos: I miss you so much, okay, babe?

Gamez: And what about your baby?

Ramos: Pray for my baby, I love my son, too.

Gamez: Alright.

Ramos: I love you, baby, I hope to see you soon, okay?

Gamez: Alright.

[irrelevant conversation omitted]

**Recording 1726408134_133_12_176_109**

[irrelevant conversation omitted]

Ramos: How's my son doing?

Gamez: Good. He was hella crying. He was hella crying.

Ramos: I know because he misses me dude.

Gamez: Yeah but he was fucking pulling on his hair. And I was trying to like, you catch his hair and I couldn't.

Ramos: But I'm just telling you like this dude. If anything happens, right, just don't let my son forget me, okay babe?

Gamez: Nothing's gonna happen dude.

Ramos: I'm just letting you know that dude. I got a lot of shit that I'm doing.

Gamez: Unless you did something to somebody in there then yeah.

Ramos: I didn't do nothing to nobody. I'm just telling you. I got a lot of haters on me right now and I'm just telling you like that.

Gamez: But why? I want to know why.

Ramos: Because you already know why, babe. I'm just letting you know.

Gamez: No, I don't.

Ramos: Yeah, you do.

Gamez: Like, see if anything happens. Like, I need to know, like, what the fuck, why?

Ramos: Like... It all revolves... Look, it all revolves around that stupid ass cop, bitch. So, I'm just letting you know...

[irrelevant conversation omitted]

Ramos: So I'm just telling you, don't let my motherfucking son forget about me. Alright? I

love you though babe. Give my son a kiss for me, okay baby?

[irrelevant conversation omitted]


**Recording 1726376652_133_13_55_902**

Gamez: Hello?

Ramos: What's up baby? What are you doing?

Gamez: Nothing.

Ramos: I love you my love.

Ramos: I love you too.

Ramos: I miss you so much, baby, how's my son doing?

Gamez: Good.

Ramos: How's my son doing? Alright?

Gamez: Uh huh.

Ramos: Give my son kisses from me or what?

Gamez: Yeah.

Ramos: Babe?

Gamez: What?

Ramos: I ain't going to make it this time, alright?

Gamez: What?

Ramos: I'm not going to make it this time, alright?

Gamez: You're not gonna make it?

Ramos: No.

Gamez: What do you mean?

Ramos: Just know I love you , okay babe?

Gamez: What the...Dude, stop!

Ramos: I'm just telling you straight up babe, I love you, okay?

Gamez: Dude, can you stop?

Ramos: Nah, I'm not though I got too much haters on me, baby. Alright?

Gamez: Too much what?

Ramos: Too much haters.

Gamez: Why?

Ramos: Cause I'm not getting out this time.

Gamez: Why you gotta say that, dude?

Ramos: Cause I'm just telling you. I love you, though, okay?

Gamez: I love you, too.

Ramos: Don't let my son forget me. I'm serious.

Gamez: Can you stop?

Ramos: I'm being serious. Don't let my son forget me. Alright, baby?

Gamez: Can you stop?

Ramos: I love you.

Gamez: Can you stop?

Ramos: Why?

Gamez: You're making me wanna cry.

Ramos: I'm just telling you. I love you so much and don't let my son forget me, okay? ...

Ramos: Give my son kisses for me and let him know his dad loves him and don't let him forget about his dad, okay?

[irrelevant conversation omitted]

**Recording 1726420606_133_13_58_591**

[irrelevant conversation omitted]

Ramos: I love you so much, baby. Give my son a kiss for me, okay? Okay, baby. I love you.

Gamez: Okay love you too

Ramos: Okay, bye.

[irrelevant conversation omitted]


**Recording 1726429352_133_12_178_485**

[irrelevant conversation omitted]

Ramos: I know I'm just saying send me some pictures of my son bitch

Gamez: How?

Ramos: Bitch just take them and fucking send then to me

Gamez: Oh, like like mail, right?

Ramos: Yeah well it's like damn dude, like when you don't like when you don't have common sense man, fuck babe.

Gamez: Can you stop?

Ramos: I love you.

Gamez: I love you too dude. Look your papa, your papa.

Ramos: Hi papa, Natas how you doing dad? Natas, daddy loves you papas, how you doing papa? I miss you dad. I miss you papas, how you doing dad?

[Baby noises]

Gamez: [inaudible]...Your papa.

Ramos: I love you babe… I love you Natas. I love you papa. Dad loves you papa.

Gamez: He's like the love of your life right?

Ramos: Alright, I love you babe.

Gamez: I love you.

Ramos: [Inaudible] I hate talking to him. Dude that shit bugs me. I hate that shit. It just fucking ah-

Gamez: Well that's why you should have been out.

Ramos: I know I wasn't out dude, but fuck dude. That shit bugs me. Alright, don't let my son forget about me okay? I love you alright?

Gamez: Alright.

Ramos: Alright. I love you, bye.

[irrelevant conversation omitted]


**Recording 1726451779_133_13_169_954**

[irrelevant conversation omitted]

Gamez: I go back outside cause I had things in the car, and your aunt pulls up out of nowhere, and I'm like, what the fuck? She brought the baby some stuff.

Ramos: What?

Gamez: She brought the baby some stuff.

Ramos: Who?

Gamez: Your aunt.

[irrelevant conversation omitted]

Ramos: I don't want you and my aunt becoming friends.

Gamez: Alright, whatever then, girl. Whatever.

Ramos: I love you though, baby.

Gamez: Like, I'm already in your life. And I'm your son's mom. It's like, even if you wouldn't want to, like, the fuck?

[irrelevant conversation omitted]

# EXHIBIT 3

**Karen N. Jacobs**

| | |
|---|---|
| **From:** | Sophie Voskanyan |
| **Sent:** | Friday, March 27, 2026 1:43 PM |
| **To:** | Paul Masuhara; Mark Merin |
| **Cc:** | edwardramos11.3.24@jlf.filevineapp.com; Karen N. Jacobs |
| **Subject:** | Re: Activity in Case 1:25-cv-00056-JLT-SKO Estate of Edward Ramos III et al v. County of Merced et al Minute Order. |
| **Attachments:** | Ramos Talking to E.R. over the phone.mp4 |

Good Afternoon Mr. Merin,

Karen had to leave the office early for a meeting, but she asked me to share the attached video of Edward Ramos speaking affectionately with his son over the phone. She had intended to present this during the meet and confer.  Please let me know if you encounter any issues with accessing the video. Thank you.

Very truly yours,

**Sophie Voskanyan**
JACOBS LAW FIRM, APC
15233 Ventura Blvd. #324
Sherman Oaks, CA 91403
O: 424.777.0207
F: 877.977.8899



Jacobs Law Firm, APC

---

**From:** Karen N. Jacobs <karen@jlfapc.com>
**Sent:** Friday, March 27, 2026 1:35 PM
**To:** Paul Masuhara <paul@markmerin.com>
**Cc:** Sophie Voskanyan <sophie@jlfapc.com>; edwardramos11.3.24@jlf.filevineapp.com <edwardramos11.3.24@jlf.filevineapp.com>; Mark Merin <mark@markmerin.com>
**Subject:** RE: Activity in Case 1:25-cv-00056-JLT-SKO Estate of Edward Ramos III et al v. County of Merced et al Minute Order.

Just saw this, give me a minute I'll generate a link.

Very truly yours,

Karen N. Jacobs, Esq.
JACOBS LAW FIRM, APC
15233 Ventura Blvd. Suite 324
Sherman Oaks, CA 91403

1

# EXHIBIT 4

## Karen N. Jacobs

| | |
|---|---|
| **From:** | Karen N. Jacobs |
| **Sent:** | Saturday, March 28, 2026 10:41 AM |
| **To:** | Mark Merin; Paul Masuhara |
| **Cc:** | edwardramos11.3.24@jlf.filevineapp.com; Sophie Voskanyan |
| **Subject:** | Estate of Edward Ramos III et al v. County of Merced et al Minute Order- Follow Up to Meet & Confer |

Good afternoon Mark,

Thank you for taking the time to meet and confer with me yesterday regarding your clients' basis for opposing my client E.R.'s motion to be named as the real party in interest. Your clients acknowledge and concede E.R. is the deceased's biological child (as evidenced by the DNA test results). Your clients also acknowledge and concede they themselves recognized E.R. as their grandchild (as evidenced by the text messages between them and E.R's mother). The basis for your client's opposition to the motion is their allegation the deceased did not hold E.R. out as his son prior to his passing. You argue this allegation creates a triable issue of fact that is to be determined by the trier of fact at trial, not by the Court at this stage.

As I mentioned during our video conference, there is sufficient irrefutable evidence that the deceased did hold E.R. out as his child, including photos of him in the delivery room holding E.R., photos of deceased embracing E.R. at home long after the birth, there are recorded phone conversations from jail wherein the deceased speaks of his son fondly (which the county produced to you even before the mediation). This video we've obtained of the deceased speaking to his son by phone, which we shared with you, on its own dispels any notion he did not recognize E.R. as his son.

The declarations your clients submitted in support of the opposition are intended to create the illusion of a disputed fact. You can submit another 10 declarations of people claiming the deceased did not want E.R. or did not believe E.R. was his. However none of these third party allegations would actually contradict or refute the undeniable evidence submitted of the deceased, in his own words and his own actions, recognizing E.R. as his son from the minute of E.R.'s birth and until deceased's passing. Mere allegations by third parties do not create triable issues. Therefore, it remains our client's position that no genuine dispute exists as to whether the deceased held E.R. out as his son prior to his passing.

Given the irrefutable evidence that the deceased did hold out his son as his own, we ask your clients withdraw the opposition so the case can move forward without unnecessary delays.

Per the Court's minute order, my office needs to file the declaration by Friday. I intend to file it on Wednesday because I will be out of town Thursday-Sunday. If I do not hear from you by Tuesday, I will assume your clients' position has not changed. If you would like to schedule another video conference to discuss further, I will make myself available at your convenience. Thank you.

Very truly yours,


Karen N. Jacobs, Esq.
JACOBS LAW FIRM, APC
15233 Ventura Blvd. Suite 324

1